IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GARNET SHORTRIDGE,

    Plaintiff,

vs.  CASE NO. 1:11-cv-71-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental security income benefits. (Doc. 1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions. (Docs. 18 and 19.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff filed an application for supplemental benefits under Title XVI of the Social Security Act (the "Act") on May 30, 2006 alleging a disability beginning June 1, 2004. (R. 87-89.) Plaintiff's application was denied initially and upon reconsideration. (R. 52-55.) Plaintiff then filed a timely request for an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on November 5, 2008. (R. 27-50.) The ALJ issued a written decision dated February 12, 2009 denying Plaintiff's application. (R. 17-26.) Plaintiff then appealed the ALJ's decision to the

Appeals Council, which denied Plaintiff's request for review on February 23, 2011. (R. 1-3.) Plaintiff then filed her Complaint in this case on April 21, 2011. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

3

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A.  Personal Background

Plaintiff, born on March 1, 1981, was 27 years of age on November 5, 2008, the date of the administrative hearing. (R. 30.) She has a twelfth grade education. (*Id.*) Plaintiff has prior work experience as a fast food worker, as a grocery bagger, and as a child day care center worker. (R. 44-46.)

#### B.  Evidence Considered By the ALJ

The Plaintiff concentrates her arguments on the ALJ's treatment of Plaintiff's mental impairments. Accordingly, the Court will focus its discussion of the record on the evidence relating to Plaintiff's mental impairments.

Plaintiff attended special education classes at Edgewater High School in

---

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

5

Orlando, Florida for an emotional handicap. (R. 115-28, 184-203.) She graduated in 2000 with a special diploma. (R. 115.) Her high school records reflect she had difficulty in developing and maintaining friendships with her peers as well as difficulties dealing with authority figures. (R. 185.) A psycho-educational evaluation was conducted by the Edgewater High School school psychologist when Plaintiff was in 11th grade in February 1999 to investigate the emotional/behavioral and academic/learning problems Plaintiff was experiencing. (R. 194-201.) As part of the evaluation a Wechsler Adult Intelligence Scale-Third Edition was administered and reflected Plaintiff's full-scale I.Q. was 78, her verbal I.Q. was 82 and her performance I.Q was 78. (R. 195-96.) The school psychologist concluded Plaintiff was exhibiting serious emotional/behavioral problems and that Plaintiff demonstrated the following characteristics of an emotional handicap: an inability to achieve adequate academic progress which cannot be explained by intellectual, sensory or health factors; an inability to build or maintain satisfactory interpersonal relationships with peers and teachers; and a general pervasive mood of unhappiness or depression. (R. 200.)

On September 7, 2006, Dr. Linda Abeles, Ph.D., a consulting psychologist, performed a consultative examination of Plaintiff. (R. 238-40.) Dr. Abeles administered a Wechsler Adult Intelligence Scale-Third Edition, which reflected a verbal I.Q. score of 75, a performance I.Q. score of 74 and a full scale I.Q. of 72. (R. 239.) Dr. Abeles noted the results were "suggestive of some fluctuation in attention and concentration abilities." (*Id.*) Dr. Abeles diagnosed Plaintiff with ADHD, borderline intellectual

6

functioning, and assigned her a GAF of 65.[21]  Dr. Abeles opined Plaintiff was "functioning in the Borderline Range of intelligence as well as having an Attention-Deficit Disorder."  (R. 240.)  She further opined Plaintiff's level of psychological functioning would likely preclude Plaintiff from obtaining or maintaining employment because Plaintiff "would have a great deal of difficulty in performing her job on a consistent basis."  (*Id.*)  Dr. Abeles further opined, however, Plaintiff "may be capable of obtaining and maintaining manual labor positions with appropriate medication management."  (*Id.*)

Dr. Val Bee, Psy.D., a non-examining consulting psychologist, completed a Psychiatric Review Technique form and Mental Residual Functional Capacity form, both of which are dated September 29, 2006.  (R. 242-59.)  Dr. Bee opined Plaintiff had moderate restrictions in her activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  (R. 252.)  Dr. Bee concluded Plaintiff "may have difficulty with detailed learning and concentrating on complex or simultaneous demands" but Plaintiff "appears capable of at least superficially appropriate and cooperative interaction."  (R. 258.)  Dr. Bee noted Plaintiff appeared "mentally capable of well structured task activity" if Plaintiff was "given some additional assistance learning a new public transportation route and setting suitable goals."  (*Id.*)

---

[21] Global Assessment of Functioning, or GAF, is a measure of an individual's psychological, social and occupational functioning.  <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32 (4th ed. 1994).  Scores range from 0 to 100 and a score between 61 and 70 represents some mild symptoms, such as a depressed mood or insomnia, or some difficulty in social, occupational or school functioning, but generally the person is functioning well and has some meaningful interpersonal relationships.  <u>Id.</u> at 34.

Non-examining consulting physician Dr. Alejandro Vergara, M.D. completed a Mental Residual Functional Capacity assessment of Plaintiff dated January 23, 2007 and a Psychiatric Review Technique dated February 2, 2007. (R. 267-70, 279-92.) He opined Plaintiff had mild limitations in her activities of daily living and moderate difficulties in maintaining concentration, persistence or pace. (R. 289.) In support of these conclusions, he noted Plaintiff may experience difficulties in trying to understand, remember and carry out detailed instructions and in maintaining concentration for extended periods of time. (R. 269.) Dr. Vergara diagnosed Plaintiff with borderline intellectual functioning and a history of attention deficit disorder and noted Plaintiff "appears to retain the necessary mental capabilities to do simple, repetitive type tasks and assignments." (R. 269, 280.)

### C. Hearing Testimony

Plaintiff testified at her November 5, 2008 administrative hearing. Plaintiff testified she had prior work experience as a fast food worker, as a grocery bagger, and as a child day care center worker. (R. 44-46.) She was fired from a job at Wendy's after two months for talking back to her supervisor. (R. 31-32.) She left the day care center job because she was tired of "doing the same old stuff over and over." (R. 32-33.) She testified she could still perform the duties of her previous day care job. (R. 33.) Plaintiff's primary reason for not working at present was her lack of transportation. (R. 33-34.) Plaintiff testified she cannot drive because she only has a learner's permit, and further stated she has attempted to obtain a driver's license because she has failed the driving test four times. (R. 39.)

As far as her medical issues, Plaintiff testified she has problems sitting and/or

8

standing for long periods of time.  (R. 34.)  She further testified she can walk for approximately half an hour and can sit for around fifteen minutes before she begins to experience pain.  (R. 35-36.)  She can lift up to 15 pounds at a time.  (R. 37.)  She also testified she has issues understanding the difference between an argument and a conversation.  (R. 40.) She further testified she cannot adjust to ordinary stress.  (R. 40-41.)  She also has issues getting along with people, controlling her anger and controlling her impulses.  (R. 41-42.)

A Vocational Expert (VE") testified at the November 5, 2008 administrative hearing.  The VE testified Plaintiff's past relevant work consisted of the positions of retail bagger, short order cook, fast food worker, and child day care center worker.  (R. 45.)  The ALJ asked the VE if a hypothetical individual with a 12th grade education, with Plaintiff's prior work experience, with no exertional limitations, and who is limited to the performance of routine, repetitive work could perform any of Plaintiff's past relevant work.  (R. 47.)  The VE responded the hypothetical individual could perform the short order cook, fast food worker and retail bagger positions.  (*Id.*)  The ALJ further refined the occupational profile of the hypothetical individual by stating the person is restricted to routine, repetitive work that would require alternating positions from standing and sitting to walking and is also restricted to work involving little or no contact with the public.  (*Id.*)  The VE testified the second hypothetical individual could not perform any of Plaintiff's past relevant work but could perform the positions of house sitter, odd piece checker, companion, and tube operator.  (R. 47-49.)  The VE further testified there were significant numbers of each of those four positions in both Florida and the national economy.  (*Id.*)

### D. The ALJ's Findings

In his written decision dated February 12, 2009, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since May 20, 2006, the application date. (R. 22.) He stated Plaintiff had the severe impairments of "borderline intellectual functioning, a history of attention deficit-hyperactivity disorder (ADHD), NOS, and obesity." (*Id.*) The ALJ further determined Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings. (R. 23.) In support of this finding, the ALJ stated Plaintiff had mild restriction in her activities of daily living and moderate difficulties with respect to concentration, persistence or pace. (*Id.*) The ALJ concluded Plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive work tasks." (R. 24.)

The ALJ then determined Plaintiff was capable of performing her past relevant work as a bagger and fast food worker, both as Plaintiff had performed those jobs as well as how those jobs are generally performed. (R. 25-26.) In support of this conclusion, the ALJ noted the VE's testimony that Plaintiff could perform her past relevant work as both a fast food worker and retail bagger. (*Id.*) Accordingly, the ALJ concluded Plaintiff has not been under a disability as of May 30, 2006, the date she filed her application for supplemental security income benefits. (R. 26.)

### IV. DISCUSSION

Plaintiff argues the ALJ committed several errors in his written decision. First, she contends the ALJ failed to adequately account for her severe mental impairments

when he assessed her RFC.  Second, Plaintiff argues the ALJ erred at Step Four in determining she had past relevant work.  Third, she contends the ALJ erred by not including twenty factors from the Commissioner's Psychiatric Review Technique form in the ALJ's hypotheticals to the VE.  Lastly, Plaintiff contends the ALJ erred by not sufficiently accounting for her moderate limitations in concentration, persistence and pace in the ALJ's hypotheticals to the VE.  The Court will discuss each issue in detail below.

> A.   **The ALJ's Determination of Plaintiff's Mental RFC Is Supported By Substantial Evidence**

Plaintiff contends the ALJ did not properly assess her mental residual functional capacity.  Plaintiff specifically argues that the ALJ erred by not adopting the mental RFC conclusions expressed by the state agency physicians.  This argument, however, ignores the fact that the ALJ's determination of Plaintiff's RFC was consistent with the medical opinions expressed by the state agency physicians, and not, as Plaintiff suggests, different from the RFC opinions expressed by the state agency physicians.

The ALJ determined Plaintiff had the severe impairments of "borderline intellectual functioning, a history of attention deficit-hyperactivity disorder (ADHD), NOS, and obesity."  (R. 22.)  The ALJ concluded Plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive work tasks."  (R. 24.)  In support of this conclusion, the ALJ expressly relied upon the state agency experts. The ALJ wrote the following:

> With respect to the claimant's mental impairments the undersigned
> concurs with the State Agency consultants that the claimant is limited to
> simple, repetitive tasks due to her borderline intellectual functioning, and

> history of attention deficit-hyperactivity disorder (ADHD). As for the opinion evidence of the State Disability Determination Services medical consultants the undersigned Administrative Law Judge concurs with such opinion evidence and gives great weight to their opinions in accordance with Social Security Ruling 96-6p.

(R. 25.)

The ALJ properly determined Plaintiff's mental RFC and the determination was supported by substantial record evidence. The ALJ extensively reviewed Plaintiff's statements as to her activities of daily living and concluded Plaintiff had moderate difficulties in concentration, persistence and pace and mild restrictions in her activities of daily living. (R. 23.) In his decision, and as discussed above, the ALJ also relied upon the findings of the consulting physicians who provided medical opinions related to Plaintiff's mental impairments. (R. 22.) In support of his mental RFC conclusion, the ALJ specifically referenced the medical opinions expressed by the consulting physicians, which was the most relevant medical evidence in the record with respect to Plaintiff's mental RFC. (R. 25.)

Despite Plaintiff's suggestions to the contrary, the opinions expressed by the state agency consulting physicians supported the ALJ's determination as to Plaintiff's mental RFC. Notably, the ALJ's determination as to Plaintiff's mental RFC was virtually identical to the opinion expressed by Dr. Alejandro Vergara, M.D., who concluded that Plaintiff "appears to retain the necessary mental capabilities to do simple, repetitive type tasks and assignments." (R. 269, 280.) Dr. Vergara further opined Plaintiff had mild limitations in her activities of daily living and moderate difficulties in maintaining concentration, persistence or pace. (R. 289.) These are the same restrictions the ALJ found and the same restrictions the ALJ accounted for in the RFC by limiting Plaintiff to

simple, repetitive tasks. (R. 23.)

Furthermore, Plaintiff's mental RFC was consistent with the other medical opinions relating to Plaintiff's mental impairments. Dr. Val Bee, Psy.D. noted Plaintiff "appears capable of at least superficially appropriate and cooperative interaction" and appeared "mentally capable of well structured task activity" if Plaintiff was "given some additional assistance learning a new public transportation route and setting suitable goals." (R. 258.) Dr. Bee concluded Plaintiff had moderate restrictions in her activities of daily living and moderate difficulties in maintaining concentration, persistence and pace. (R. 252.) Similarly, Dr. Linda Abeles opined Plaintiff "may be capable of obtaining and maintaining manual labor positions with appropriate medication management." (R. 240.) In sum, these opinions are consistent with Plaintiff's mental RFC, which limited Plaintiff to simple, routine, repetitive work tasks.

Accordingly, for these reasons, the Court concludes that the ALJ did not err in his evaluation of Plaintiff's mental RFC.

### B. The ALJ Erred in his Step Four Determination That Plaintiff Could Perform Her Past Relevant Work

Plaintiff contends the ALJ erred at Step Four of the sequential analysis in finding that Plaintiff could perform her past relevant work because Plaintiff did not have any past relevant work. According to Plaintiff, all of her prior work experience took place while she was in a special education community based instruction program and thus constituted sheltered work. Further, Plaintiff points out the record reflects that none of her previous work experience rose to the level of substantial gainful activity. The court agrees that the ALJ erred by assuming that Plaintiff's past work qualified as past

relevant work, or at a minimum, because the ALJ never addressed the issue the Court cannot determine on this record that the work identified by the ALJ as past relevant work qualifies as such. In either case, reversal and remand is warranted.

At Step Four, the claimant bears the burden of demonstrating her or she cannot return to his past relevant work.[22] If a claimant's impairments do not prevent her from performing past relevant work, she is not disabled.[23] In order to constitute past relevant work, the job must have been performed within a fifteen year period, must have lasted long enough for the claimant to learn to do it, and must have been performed at a substantial gainful activity level. 20 C.F.R. § 416.965(a). An individual's work will be presumed to be substantial gainful activity if his monthly earnings averaged more than: $500 for the years 1990 through 1999, $700 for the second half of 1999 and 2000, $740 for 2001, $780 for 2002, $800 for 2003 and $810 for 2004. 20 C.F.R. § 416.974(b)(2)(i). A position in which the claimant's earnings level surpasses the monthly earnings threshold still may not qualify as substantial gainful activity, however, if the work is performed in a sheltered workshop or special environment. 20 C.F.R. § 416.974(a)(2)-(3).

The ALJ in this case concluded at Step Four of the sequential analysis that Plaintiff was not disabled because she could perform her past relevant work. In his written decision the ALJ concluded at Step Four that Plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations:

---

[22] Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990)("The claimant also bears the initial burden of proving that she is unable to perform her previous work.").

[23] 20 C.F.R. § 404.1520(e).

simple, routine, repetitive work tasks." (R. 24.)  Based upon the VE's testimony, the ALJ then determined Plaintiff was capable of performing her past relevant work as a bagger and fast food worker, both as Plaintiff had performed those jobs as well as how those jobs are generally performed.  (R. 25-26.)

The ALJ never addressed whether Plaintiff's jobs of bagger and fast food worker constituted past relevant work and instead assumed these jobs qualified as past relevant work even though the record of Plaintiff's prior work experience evidences that Plaintiff only made $1,561.91 in 1998, $2,862.00 in 2000, $1,910.65 in 2001 and $793.44 in 2004 for total lifetime earnings of only $7,128.00, well below the threshold amounts necessary for any of Plaintiff's prior work positions to qualify as past relevant work.  (R. 91-95.)  There is also an issue as to whether some of that work constituted sheltered employment because it appears that the work was performed or occurred as part of a community based instruction program that was an element of Plaintiff's special education program at Edgewater High School.  (R. 186-88.)

Apparently recognizing the problem the Commissioner candidly acknowledges "that the evidence leaves some question as to whether Plaintiff performed her previous jobs at the substantial gainful activity level, and whether those jobs therefore can be considered past relevant work." Doc. 19, p. 10.  The Commissioner suggests, however, that the Court should treat the ALJ's Step Four error as harmless because the ALJ posed complete hypotheticals to the VE and then went on to find at Step Five that Plaintiff could perform certain positions which exist in substantial numbers in the national economy.  (*Id.*)  A review of the ALJ's decision does not support this suggestion. The ALJ ended his analysis at Step Four and never went on to make a

finding at Step Five that there were other jobs Plaintiff could perform that existed in significant numbers in the national economy. Consequently, the ALJ's error does not constitute harmless error but rather would require the Court to conduct the Step Five analysis and in essence engage in fact finding, which is inappropriate and is a matter reserved for the administrative agency.  The limited role of the Court in reviewing an administrative decision of the Social Security Administration is to determine whether the Commissioner's decision is based upon the applicable legal principles and whether the decision is supported by substantial evidence in the record.  42 U.S.C. § 405(g).

Accordingly, for these reasons, this case should be remanded with instructions to the ALJ to (i) evaluate and determine whether Plaintiff has any past relevant work, (ii) if Plaintiff does have past relevant work, whether she can perform any of that past relevant work with her RFC, and (iii) if Plaintiff does not have past relevant work or she cannot perform her past relevant work, to perform the required analysis at Step Five.

### C. The ALJ Was Not Required To Include The Twenty Factors in the Psychiatric Review Technique Form in his Hypothetical Questions

Plaintiff also contends the ALJ erred by posing hypothetical questions to the VE, which did not include all of the Plaintiff's mental impairments. Specifically Plaintiff argues that the ALJ should have included the twenty factors contained in the Commissioner's Psychiatric Review Technique ("PRT") form in the hypothetical questions the ALJ posed to the VE.  The Court disagrees.

Generally, when posing a hypothetical to a VE the ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's

impairments included in the RFC.[24]  The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC.  In order for a response to a hypothetical question to constitute substantial evidence of work available to the claimant (at Step Five), the question must set out all of the claimant's impairments.[25]  However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ properly rejects, nor must he accept the VE's responses to hypothetical questions that include unsupported allegations.[26]

In this case, the ALJ asked the VE if a hypothetical individual with a 12th grade education, with Plaintiff's prior work experience, with no exertional limitations, and who is limited to the performance of routine, repetitive work could perform any of Plaintiff's past relevant work.  (R. 47.)  The VE testified that in his opinion the hypothetical individual could perform the jobs of short order cook, fast food worker and retail bagger.  (*Id.*)  The ALJ then further refined the occupational profile of the hypothetical individual to include the restrictions of alternating positions from standing and sitting to walking with little or no contact with the public.  (*Id.*)  The VE testified that an individual with these additional restriction could not perform any of Plaintiff's past relevant work but could perform the positions of house sitter, odd piece checker, companion, and tube operator.  (R. 47-49.)

The ALJ was not required to include the twenty factors from Section I of the PRT

---

[24] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[25] Wilson v. Barnhart, 284 F3d.1219, 1227 (11th Cir. 2002).

[26] Wright v. Comm'r of Soc. Sec., 327 Fed. Appx. 135, 137 (11th Cir. 2009).

17

in his hypotheticals to the VE.  As explained in the Commissioner's Program Operations Manual System ("POMS")[27], the twenty factors listed in Section I of the PRT, entitled "MEDICAL SUMMARY," are intended to be used as "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of the documentation."[28]  Instead, it is Section III, the "RATING OF FUNCTIONAL LIMITATIONS", which is used to record the actual mental RFC assessment and which "adjudicators are to use as the assessment of RFC" in deciding whether an individual is disabled.[29]  Therefore, an ALJ is not required to include the twenty factors listed in Section I of the PRT in the ALJ's hypotheticals to a VE.[30]

In this case, the ALJ specifically reviewed the conclusions expressed by Drs. Val Bee and Alejandro Vergara in Section III of the PRT's completed by each doctor, referenced those conclusions in formulating Plaintiff's RFC and then stated he concurred with those opinions and gave them "great weight."  (R. 24-25.)  Accordingly, the ALJ did not err in failing to include the twenty factors from Section I of the PRT forms completed by Drs. Bee and Vergara in his hypotheticals to the VE, as he specifically included each doctor's medical opinion in the hypotheticals.

---

[27] "While the POMS does not have the force of law, it can be persuasive."  Stroup v. Barnhart, 327 F.3d 1258, 1262 (11th Cir. 2003).

[28] POMS § DI 24510.060(B)(2)(1).

[29] Id. § DI 25025.010(B)(1).

[30] Smith v. Comm'r of Soc. Sec, 631 F.3d 632, 636-37 (3d Cir. 2010).

### D. On Remand, the ALJ Must Sufficiently Account For Plaintiff's Moderate Limitation in Concentration, Persistence or Pace in the ALJ's Hypotheticals

Plaintiff also argues the ALJ erred in not explicitly including a moderate limitation in concentration, persistence or pace in the ALJ's hypotheticals despite the ALJ's Step Three determination that Plaintiff had moderate difficulties in concentration, persistence or pace. Plaintiff contends this violated a recent Eleventh Circuit case, *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011). The ALJ will be directed to ensure that any hypotheticals the ALJ poses to the VE on remand properly account for Plaintiff's moderate limitation in concentration, persistence and pace in accordance with *Winschel.*

*Winschel* instructs that if the ALJ determines Plaintiff has moderate difficulties in concentration, persistence or pace, then the ALJ's hypotheticals to the VE must account for those difficulties.[31] In accounting for those limitations, the ALJ should include those limitations in the hypothetical *or* if the "medical evidence demonstrates that [Plaintiff] can engage in simple, routine tasks or unskilled work" despite moderate limitations in concentration, persistence or pace the ALJ may account for the limitations by limiting Plaintiff's RFC to simple, routine tasks or unskilled work.[32] Thus, on remand, the ALJ should make a specific finding as to whether the record medical evidence supports the conclusion that Plaintiff can engage in simple, routine tasks despite her moderate limitations in concentration, persistence and pace. In the absence of such a

---

[31] Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011).

[32] Id. at 1180.

finding the ALJ cannot account for moderate difficulties in concentration, persistence and pace by simply limiting Plaintiff to simple, routine tasks.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) to: (i) evaluate and determine whether Plaintiff has any past relevant work; (ii) if Plaintiff does not have past relevant work or if she cannot perform her past relevant work, the ALJ should perform the required analysis at Step Five to determine whether Plaintiff can perform other work; and (iii) make a specific finding as to whether Plaintiff's moderate limitations in concentration, persistence or pace are accounted for in the record medical evidence.

**IN CHAMBERS** in Gainesville, Florida, on April 3, 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**